UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DUSHYANTH PESAR REDDY,

           Plaintiff,

v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

**MEMORANDUM & ORDER**
23-CV-07947 (HG)

---

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff Dushyanth Pesar Reddy seeks judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), of the Commissioner of the Social Security Administration's ("SSA") final decision denying his application for Supplemental Security Income ("SSI") disability benefits. *See* ECF No. 1 (Compl.). Before the Court are the parties' cross-motions for judgment on the pleadings. *See* ECF No. 7 (Plaintiff's Motion); ECF No. 9 (Defendant's Motion); ECF No. 10 (Plaintiff's Reply). Plaintiff seeks remand of this action to SSA, while Defendant asks the Court to affirm SSA's decision denying SSI benefits. For the reasons explained below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

    Plaintiff first applied for SSI on January 15, 2020, alleging disability based on "diabetes" and a "liver condition." ECF No. 5 at 15, 60 (Administrative Record; "AR").[1] The SSA initially disapproved Plaintiff's claim on December 4, 2020. *Id.* at 86–97. His request for reconsideration of that decision was subsequently denied on May 17, 2021. *Id.* at 99–110.

---

[1]     Citations to ECF refer to the pages assigned by the Electronic Case Files System. Citations to AR refer to the pages assigned by the Administrative Record. Unless otherwise indicated, when quoting cases and the AR, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

Plaintiff then requested a hearing before an SSA Administrative Law Judge ("ALJ"), which took place on April 1, 2022. *Id.* at 30–58. At the hearing, Plaintiff was represented by an attorney, and a vocational expert ("VE") also testified. *Id.* at 32.

On June 20, 2022, the ALJ issued her decision, determining that Plaintiff was not disabled within the meaning of the Social Security Act since January 15, 2020. *Id.* at 12–23. In her own words, the ALJ reached the following conclusions:

1. The claimant has not engaged in substantial gainful activity since January 15, 2020, the application date (20 CFR 416.971 *et seq*.).
2. The claimant has the following severe impairments:  migraine headaches; chronic pain syndrome; diabetes mellitus with neuropathy; hypertension; chronic kidney disease; and myopia, status post corneal transplant (20 CFR 416.920(c)).
3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except that he can climb ramps and stairs occasionally, and never climb ladders, ropes, or scaffolds.  He can occasionally kneel, crouch, and crawl.  He has occasional far acuity and depth perception.  The claimant can never work at unprotected heights, or near moving mechanical parts, or operate a motor vehicle.
5. The claimant is capable of performing his past relevant work as a cashier checker (vocational expert's testimony).  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).
6. The claimant has not been under a disability, as defined in the Social Security Act, since January 15, 2020, the date the application was filed (20 CFR 416.920(f)).

*Id.* at 18–22. The SSA's Appeals Council denied Plaintiff's request for review on August 21, 2023, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 1–3. Plaintiff then sought review in this Court by initiating this action on October 25, 2023. ECF No. 1.

## LEGAL STANDARD

When a plaintiff challenges an ALJ's decision as unsupported by substantial evidence, as Plaintiff does here, the Court must "conduct a plenary review of the administrative record" and

2

determine "whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). "The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022). But the standard is "not merely hortatory:  It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022). The Court is therefore "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Schillo*, 31 F.4th at 74. Once an ALJ has made findings of fact, however, the Court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (emphasis in original). Put another way, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.* Although an ALJ is not required to "reconcile[]" "every conflict in [the] record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

## DISCUSSION

On appeal, Plaintiff takes issue with the ALJ's assessment of his residual functional capacity ("RFC"), claiming that it was not supported by substantial evidence. *See* ECF No. 7-1 at 11. As a reminder, the ALJ concluded "that the claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b), except that he can climb ramps and stairs occasionally, and never climb ladders, ropes, or scaffolds. He can occasionally kneel, crouch, and crawl. He has occasional far acuity and depth perception. The claimant can never work at unprotected heights, or near moving mechanical parts, or operate a motor vehicle." AR at 18. The Court begins its

analysis with a brief discussion of how the ALJ determines a claimant's RFC, including as applied to this case, and then addresses Plaintiff's challenges to the RFC.

> A.   *Determining RFC and Disability*

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is performing substantial gainful activity, then the claimant is not disabled. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the twelve-month durational requirement. *Id.* § 404.1520(a)(4)(ii) (referencing *id.* § 404.1509); *id.* § 416.920(a)(4)(ii) (referencing *id.* § 416.909). If the claimant does not have a severe impairment or combination of impairments that meets the durational requirement, then the claimant is not disabled. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled. If not, the ALJ proceeds to step four.

At step four, the ALJ evaluates the claimant's past relevant work and RFC, defined as "the most [the claimant] can still do despite [his] limitations." *Id.* § 404.1545(a)(1); *see id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past five years,[2] the work qualifies as substantial gainful activity,

---

[2]   At the time of the ALJ's decision, Section 404.1560(b)(1) provided for a 15-year lookback. On June 22, 2024, the Commissioner promulgated a final rule amending it to shorten the period to five years. *See* Intermediate Improvement to the Disability Adjudication Process,

4

and the work lasted long enough for the claimant to learn how to do it. *Id.* §§ 404.1560(b)(1)(i), 416.960(b)(1)(i). If the claimant's RFC permits him to perform past relevant work, he is not disabled. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of his RFC, age, education, and work experience, a claimant can perform other substantial gainful employment. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In this case, the ALJ ended her analysis at step four, concluding that in light of the previously described RFC, Plaintiff "is capable of performing his past relevant work as a cashier checker," which "does not require the performance of work-related activities precluded by the . . . [RFC]." AR at 22.

### B.     *Challenges to the RFC*

Having reviewed the entire record, the Court concludes that the ALJ's determination of Plaintiff's RFC was supported by substantial evidence. Plaintiff claims two specific errors with the RFC determination. First, he says that the ALJ "failed to consider [his] severe migraine headaches." ECF No. 7-1 at 12. Second, he states that the ALJ "erred in her evaluation of Dr. Atoynatan's opinion." *Id.* The Court addresses each in turn.

#### i.     Migraine Headaches

Plaintiff first argues that because the ALJ found at step two that he suffered from migraine headaches, "[a] reasonable person would expect some limitations for being off task when a migraine headache occurs or some allowance for loss of concentration due to a migraine

---

Including How We Consider Past Work, 89 Fed. Reg. 27653 (Apr. 18, 2024); Intermediate Improvement to the Disability Adjudication Process, Including How We Consider Past Work; Deferral of Effective Date, 89 Fed. Reg. 48138 (June 5, 2024). As the Tenth Circuit recently observed, nothing in the amended rule suggests that it should be applied with retroactive effect, so even if this aspect of the analysis were directly relevant here, the Court would still apply the version of the rule that the ALJ used, *see Tina W. v. Comm'r, SSA*, No. 24-4029, 2024 WL 5165687, at *3 (10th Cir. Dec. 19, 2024), as is consistent with the Second Circuit's practice, *see Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 n.1 (2d Cir. 2015).

headache." *Id.* Accordingly, he faults the ALJ for failing to "include any limitations for migraine headaches in the RFC" and for not "provid[ing] an explanation as to why [Plaintiff]'s migraine headaches had no impact on work in the RFC." *Id.* (emphasis omitted).

On this issue, Defendant is right to point out that the record supports the view that Plaintiff's migraines had largely resolved with treatment. *See* ECF No. 9-1 at 12–13. Before receiving Botox injections for headaches, Plaintiff reported pain of 5-6/10 with medication in February 2020, *see* AR at 409, which, after he had started receiving the injections, had decreased to 2-3/10 with Botox and other medications by June 2020, *see id.* at 504.[3] In June 2020, his doctor noted that the headaches had been "resolved for 3 months," with the Botox "help[ing] significantly." *Id.* at 503. That 2-3 level of headache-related pain remained in his doctor's notes through January 2021, *see id.* at 506–11, 514–24, but Plaintiff did not report headaches during various doctor's visits, including at consultative examinations in April and May 2021, *see id.* at 531–34, 536–41, and at neurology visits between June and December 2021, *see id.* at 546–60.[4] Plaintiff also confirmed to the ALJ at his April 2022 hearing that the migraine-related pain was resolved with medication. *See id.* at 43–44.

Furthermore, Defendant is correct in arguing that the ALJ grappled with this evidence. *See* ECF No. 9-1 at 13. The ALJ explained that Plaintiff complained of headaches in January and February 2020; that the June 2020 doctor's records indicate that Plaintiff's "headaches ha[d] been resolved for three months and that the Botox helped significantly"; that Plaintiff had a pain

---

[3] The treatment notes refer to "VAS." That is the Visual Analogue Scale, "which is a unidimensional measure of pain intensity, with 10 being the highest amount of pain and 1 being the lowest amount of pain." *See McIntosh v. Berryhill*, No. 17-cv-5403, 2018 WL 4376417, at *3 n.8 (S.D.N.Y. July 16, 2018), *report and recommendation adopted*, 2018 WL 4374001 (S.D.N.Y. Sept. 12, 2018).

[4] At the June and July 2021 visits, he also reported going to the gym regularly. *See* AR at 555, 558.

6

level of 2-3 in August 2020; and that his "headaches are treated with Botox, which controls the pain." *See* AR at 19–21. In addition, the ALJ also credited the opinion of the VE, *id.* at 22, who testified that Plaintiff would have been able to perform his past relevant work as a cashier checker with the restrictions included in the ALJ's ultimate RFC, *see id.* at 53–54. Accordingly, the ALJ's consideration of the evidence concerning headaches distinguishes this case from those relied on by Plaintiff, ECF No. 7-1 at 12–13, in which the "the ALJ included no meaningful discussion of the impact of Plaintiff's headaches or of any limitations associated therewith," *see Green v. Berryhill*, No. 17-cv-00853, 2018 WL 4764895, at*5 (W.D.N.Y. Oct. 2, 2018), or the "analysis [of migraines] [was] so sparse as to make it impossible for the [C]ourt to determine whether substantial evidence supports the ALJ's determination," *see Davila v. Comm'r of Soc. Sec.*, No. 16-cv-4774, 2018 WL 5017748, at *22 (E.D.N.Y. Oct. 16, 2018).

Apparently based on his view of the foregoing, Plaintiff believes a more restrictive RFC was required. But aside from his invocation of an unsupported "reasonable person" standard, Plaintiff fails to explain how any evidence in the record actually necessitates the inclusion of off-work time in the RFC. *See Parent v. O'Malley*, No. 23-917, 2024 WL 3342463, at *2 (2d Cir. July 9, 2024) (rejecting plaintiff's argument that the ALJ erred by "fail[ing] to include 'time off-task' and 'time off work'" where plaintiff "fail[ed] to specify the basis for [that] assertion in his brief"); *cf. Glorivy E.C. v. Comm'r of Soc. Sec.*, No. 24-cv-01919, 2024 WL 5202026, at *7 n.5 (S.D.N.Y. Dec. 23, 2024) ("Plaintiff points to no evidence of additional work-related limitations specifically related to obesity that the ALJ failed to consider or incorporate.").[5] More

---

[5]   Here, Plaintiff points to testimony indicating that the Botox treatment was not absolutely effective and that he experienced migraines for the final two weeks of a three-month period. *See* ECF No. 10 at 2 (citing AR at 43). But Plaintiff also said that he also took Tylenol for the migraines, which resolved the pain, *see* AR at 43–44, and his testimony about pain that would prevent him from working was in relation to medication for leg pain, *see id.* at 42, 44, as explained by the ALJ, *see id.* at 19.

7

fundamentally, his argument suggests that this Court should undertake a more searching inquiry, but that exceeds this Court's "limited review." *See Schillo*, 31 F.4th at 69. After all, "an ALJ's conclusions need not perfectly correspond with any of the opinions of medical sources cited in h[er] decision because the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole." *Id.* at 78. Here, the ALJ considered the headache-related evidence and, observing that Plaintiff's headaches had largely resolved with medication, reached an RFC supported by substantial evidence. She further concluded, consistent with that RFC, that Plaintiff could work as a cashier checker. *See Castillo v. O'Malley*, No. 24-41-cv, 2024 WL 4707253, at *2 (2d Cir. Nov. 7, 2024) (rejecting the argument the ALJ erred in not finding a more restrictive RFC where "[t]he ALJ did not disregard [the] migraine headaches but recognized them as 'severe' and limited" the plaintiff to certain kinds of work). That is enough.

ii.    Vision

Plaintiff's second critique concerns Dr. Atoynatan's evaluation of his vision. *See* ECF No. 7-1 at 13. After performing a consultative evaluation in April 2021, Dr. Atoynatan wrote that Plaintiff "does not have any physical impairments, but he does have marked problems with his vision" and "should avoid activities that require visual acuity." AR at 534. Plaintiff now says that assessment cannot be squared with the ALJ's determination that he has "occasional far acuity and depth perception," *id.* at 18, claiming that the ALJ "improperly substituted" her "lay opinion" for Dr. Atoynatan's, ECF No. 7-1 at 13 (cleaned up). The Court disagrees.

When evaluating Dr. Atoynatan's opinion, the ALJ was required to "consider[] [its] persuasiveness . . . using the factors listed in [20 C.F.R.] § 404.1520c(c)(1)–(5)." *Rubin v. O'Malley*, 116 F.4th 145, 148 (2d Cir. 2024). Those factors are supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict

8

a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(1)–(5). "[S]upportability and consistency are the most important, and the Commissioner must therefore explain how he considered supportability and consistency as applied to [the] medical source's opinion in his determination or decision." *Rubin*, 116 F.4th at 148. Here, the ALJ satisfied those requirements in her detailed consideration of Dr. Atoynatan's opinion, which led her to find it only "somewhat persuasive." *See* AR at 21. For one, the ALJ disagreed with the doctor's assessment that there were no physical limitations, specifically (and importantly) considering Plaintiff's migraines. *See id.* at 22. At the same time, and as relevant here, the ALJ concluded that "the vision limitations [were] too extreme" because Plaintiff "was not wearing glasses and was able to read small print," could "take public transportation independently," and "was able to navigate and maneuver objects without assistance." *Id.* Plaintiff does not contest, nor could he, that all those factual conclusions find firm support in the record. *See id.* at 533, 539; *see also id.* at 48–49 (Plaintiff testifying that he had no problem taking the train multiple times per week nor attending to his personal care). Plus, there is additional evidence in the record consistent with the ALJ's conclusion. *See id.* at 78–79 (May 14, 2021, medical assessment finding, *inter alia*, "limited" bilateral near acuity but "unlimited" far acuity and depth perception).

In view of the foregoing, the Court rejects Plaintiff's arguments that "it is impossible to trace the path of the adjudicator's reasoning" and that the ALJ "cherry-picked medical findings." *See* ECF No. 7-1 at 14 (cleaned up). Those generic contentions are belied by the ALJ's balanced and considered treatment of Dr. Atoynatan's opinion. Contrary to Plaintiff's implied argument, the ALJ is permitted to, in view of the record, discount a physician's opinion. *See Schillo*, 31 F.4th at 77. And she appropriately did so here because Dr. Atoynatan's opinion on Plaintiff's vision lacked supportability and was inconsistent with other evidence in the record. *See* 20

C.F.R. § 404.1520c(c)(1)–(2).[6] Because substantial evidence supported the ALJ's finding that Dr. Atoynatan's vision limitations were "too extreme," this Court "cannot second-guess that decision on appeal." *See Schillo*, 31 F.4th at 77–78.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied, Defendant's motion is granted, and the Commissioner's decision is affirmed. The Clerk of Court is respectfully directed to enter judgment consistent with this decision and to close this case.

SO ORDERED.

                                                                     */s/ Hector Gonzalez*
                                                                     HECTOR GONZALEZ
                                                                     United States District Judge

Dated: Brooklyn, New York
        January 3, 2025

---

[6] Separately, Plaintiff states that "[i]t is worth noting that Dr. Atoynatan is a pediatrician." ECF No. 7-1 at 7 n.1. It is unclear what Plaintiff intends to imply with that argument, but if anything, that fact provides an additional reason why the ALJ might reasonably discount his opinion in a specialized area like vision. *See Robin P. v. Comm'r of Soc. Sec.*, No. 20-cv-863, 2022 WL 593612, at *8 (N.D.N.Y. Feb. 28, 2022) ("That rule [20 C.F.R. § 404.1520c(c)(5)] does not disqualify the opinion of a non-specialist, but instead directs the ALJ to consider specialization in deciding how much weight to afford an opinion.").